IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA


JAMES MICHAEL WEBSTER,      )
                         )
           Plaintiff,        )
                         )
v.                       )       Case No. 10-CV-384-GKF-PJC
                         )
CITY OF BIXBY, a municipal corporation,   )
                         )
          Defendant.       )


### OPINION AND ORDER

Before the court are the Motion for Summary Judgment of defendant City of Bixby [Dkt. #32] and the Motion for Partial Summary Judgment of plaintiff James Michael Webster [Dkt. #33].

Plaintiff, a former employee of the City of Bixby, has sued the City for (1) deprivation of property interest in violation of his Fourteenth Amendment right of due process; and (2) failure to pay accrued vacation and sick time in violation of the 40 O.S. § 165.1 *et seq*. The City has filed a Motion for Summary Judgment on both claims [Dkt. #32]. Plaintiff has filed a cross Motion for Partial Summary Judgment on the due process claim only [Dkt. #33].

Plaintiff served as Assistant City Manager of Bixby from April of 2004 until July 14, 2009, when City Manager Blu Hulsey eliminated the position. The same day, Hulsey offered him a job as a Code Enforcement Officer. Plaintiff accepted the offer on July 15, 2009. On July 17, 2009, he rescinded his acceptance. Hulsey viewed this as a resignation, and severed plaintiff's employment. Plaintiff was paid accrued vacation and sick time based on his salary as

1

a Code Enforcement Officer.  Plaintiff filed a claim with the Oklahoma Department of Labor ("ODL"), asserting his vacation and sick pay should have been based on his salary as Assistant City Manager.  The ODL dismissed the claim.  He filed this lawsuit in Tulsa County District Court alleging a taking of his property interest in violation of his Fourteenth Amendment right of due process and appealing the ODL's dismissal of is wage claim.  The case was removed to federal court based on federal question jurisdiction.

The resolution of plaintiff's due process claim turns on interpretation of the Bixby Home Rule City Charter and the Bixby Employee Handbook.   Specifically, the court must determine whether, under the Charter, the city manager had the authority to eliminate the position of Assistant City Manager and whether, under the Charter and Employee Handbook, plaintiff was an "at will" employee or could only be terminated for cause.

The viability of plaintiff's ODL claim depends on whether the City properly paid him his "wages in full," as required by 40 O.S. §165.3(A).

The parties have engaged in an enormous amount of sparring over the language of the City Charter and Employee Handbook.  Plaintiff, in particular, has drawn on testimony of past and present city councilors, the mayor (a ceremonial position filled by a councilor) and city managers in an effort to "interpret" key provisions of the Charter and Employee Handbook.

## I.  Material Facts

1. Plaintiff Mike Webster began his employment with the City of Bixby in 1978 as a member of the police department.  In 1986, after working his way through the ranks of law enforcement, plaintiff was appointed Chief of the Bixby Police Department by Micky Webb, Bixby's City Manager at the time.  [Dkt. #32, Defendant's Statement of Fact ¶1; Dkt. #39, Plaintiff's Response to Defendant's Statement of Fact ¶1].

2. Plaintiff retired from law enforcement in December of 2001, whereupon he immediately became employed in the City Manager's office as the Administrative Assistant to the City Manager.  Since the time of plaintiff's promotion, no one has been hired to fill the vacant position of Administrative Assistant to the City Manager.   [Dkt. #32, Defendant's Statement of Fact ¶2; Dkt. #39, Plaintiff's Response to Defendant's Statement of Fact ¶2].

3.  Plaintiff was subsequently promoted to Assistant City Manager in April of 2004. [Dkt. #32, Defendant's Statement of Fact ¶3; Dkt. #39, Plaintiff's Response to Defendant's Statement of Fact ¶3].

### Creation of Assistant City Manager Job/Appointment of Plaintiff to Job

4.  The Minutes of a City Council Meeting on April 12, 2004, state, in pertinent part:

> **Item #17 on the Regular Agenda is:**
>
> Approve Appointment of Mike Webster as Assistant City Manager.
>
> Micky Webb
>
> Presented by Mayor Williams
>
> Todoroff made motion to approve seconded by Ferree.
>
> Carried 5-0….

[Dkt. #32, Ex. O, p. 8].  Thus, it is undisputed that the City Council approved Webster's hiring as Assistant City Manager.

5.  The parties dispute when and how the Assistant City Manager position came into being, and whether it was created by a vote of the City Council.  Citing the Affidavit of Micky Webb, plaintiff contends that the City Council created "the office of Assistant City Manager" and appointed him to the job at that time.  [Dkt. #33, Plaintiff's Statement of Fact ¶8 and Ex. 3,

Webb Affid., ¶2].[1]  Defendants submit the Affidavit of Rebecca K. Byers, former City Treasurer and Finance Director and Interim City Manager in June 2009.  [Dkt. #41, Ex. A, Byers Affid.]  According to Byers, plaintiff was not the first employee of the City of Bixby to hold the title of Assistant City Manager.  [*Id.*, ¶¶3-5].  Byers states that Mike Jones held the title from May 2000 until his resignation in March 2004, and she attaches a May 22, 2000 memorandum from Micky Webb to her stating that Mike Jones would be hired as "Asst. City Manager/Public Works Director" on May 22, 2000.  [*Id.* and Ex. 1 thereto].  Jones held that position until he resigned in March of 2004.  [*Id.,* Ex. A, Byers Affid. ¶4 and Ex. 2 thereto].  Byers states that thereafter, plaintiff was "given the title of 'Assistant City Manager.'"  [*Id.,* ¶5].  Exhibit 2 to Byers' Affidavit is a memo from Webb to Cheryl Sass, City Clerk, in which Webb states:  "Mike Webster has been appointed assistant City Manager effective 4-12-04," and directs an increase in his compensation.  [Dkt. #41, Ex. A, Byers Affid. and Ex. 2 thereto].[2]

6.  In 2009, Micky Webb left his position as City Manager.  [Dkt. #32, Defendant's Statement of Fact ¶4; Dkt. #39, Plaintiff's Response to Defendant's Statement of Fact ¶39].

---

[1] Plaintiff also submits the affidavit of Joe Williams, Mayor of Bixby until 2006.  [Dkt. #33, Ex. 4, Joe Williams Affid. ¶1].  Williams states, "In 2004, the Bixby City Council created the position of Assistant City Manager and appointed James Michael Webster to such position."  [*Id.,* ¶2]. Williams's affidavit does not indicate when he became Mayor of Bixby.

[2] Defendant also submits the Affidavit of current city council member Steve Todoroff, who has served off and on as a member of the Bixby City Council since 1981.  [Dkt. #41, Ex. B, Todoroff Affid., ¶¶1-3].  Todoroff states that he was on the City Council when Webb promoted plaintiff from Administrative Assistant to the "position" of Assistant City Manager.  Although Webb asked the City Council to approve his appointment of Webster as Assistant City Manager, Todoroff states that "Council approval was not necessary."  [*Id.,* ¶4].  Further, Todoroff states that when the Council approved Webb's appointment of Webster as Assistant City Manager, the council did not create the position [*Id.,* ¶5], and that before Webster was appointed Assistant City Manager, Mike Jones held the position for several years, until his resignation in March, 2004.  [*Id.,* ¶6].  According to Todoroff, Webb "simply gave Webster the title of Assistant City Manager which had been previously held by Mike Jones, and the Council voted to approve Webb's action in that regard."  [*Id.,* ¶7].  Todoroff states that recently, the current City Manager appointed City Engineer, Jared Cottle, to serve in the additional role of Assistant City Manager, that "[H]e did so without any vote of the Council, because approval of the Council is not necessary to appoint or remove someone to that position."  [*Id.,* ¶8].

7.  After Webb's departure, Becky Byers, the City Treasurer, served as the interim City Manager.  [Dkt. #32, Defendant's Statement of Fact ¶5; Dkt. #39, Plaintiff's Response to Defendant's Statement of Fact ¶5].

8.  On July 1, 2009, Blu Hulsey became the new City Manager.  [Dkt. #32, Defendant's Statement of Fact ¶6; Dkt. #39, Plaintiff's Response to Defendant's Statement of Fact ¶6].

9.  During the following two to three weeks, plaintiff had minimal contact with Hulsey.  [Dkt. #32, Defendant's Statement of Fact ¶7 and Ex. A, Webster Dep., 79:10-19].

10.  Upon becoming City Manager, Hulsey familiarized himself with the City's needs.  He determined that Bixby needed better code enforcement and therefore needed a Code Enforcement Officer.  Hulsey did not find that he needed an Assistant City Manager.  [Dkt. #32, Defendant's Statement of Fact ¶8; Dkt. #39, Plaintiff's Response to Defendant's Statement of Fact ¶8].

11.  On July 14, 2009, Hulsey informed plaintiff that the City of Bixby would no longer have an Assistant City Manager, but would need a Code Enforcement Officer.  The position was offered to plaintiff, who said he would think about it and give his answer the next day.  [Dkt. #32, Defendant's Statement of Fact ¶9; Dkt. #39, Plaintiff's Response to Defendant's Statement of Fact ¶9.

12.  Hulsey did not obtain majority approval of the Bixby City Council before he eliminated the position of Assistant City Manager.  [Dkt. #33, Plaintiff's Statement of Fact ¶13 and Ex. 2, Webster Affid., ¶10].  The Bixby City Council never voted to approve elimination of the job.  [Dkt. #33, Plaintiff's Statement of Fact ¶13 and Ex. 8, Bowen Depo., 67:12-15; 68:12-20; 69:8-11].

13.  On July 15, 2009, plaintiff told Hulsey he would "go with the flow."  [Dkt. #32, Defendant's Statement of Fact ¶10 and Ex. A, Webster Dep., 85:24-86:3 and Ex. B., Hulsey Dep., 76:23-77:22; Dkt. #39, Plaintiff's Response to Defendant's Statement of Fact ¶10]. Following this, Hulsey informed the payroll department plaintiff had accepted the new position and new rate of pay.  [Dkt. #32, Defendant's Statement of Fact ¶10 and Ex. C, Letter from Hulsey to Personnel Department, 7/15/09; Dkt. #39, Plaintiff's Response to Defendant's Statement of Fact ¶10].

14.  On July 16, 2009, plaintiff met with Hulsey and the City Planner, and Hulsey advised plaintiff of his new duties.  [Dkt. #32, Defendant's Statement of Fact ¶11 and Ex. A, Webster Dep., 89:20-91:20 and Ex. B, Hulsey Dep., 76:23-77:7].  During the meeting, plaintiff did not ask questions, nor did he raise any concerns or objections about his new position.  [Dkt. #32, Defendant's Statement of Fact ¶11 and Ex. A, Webster Dep., 91:21-92:2].

15.  On July 17, 2009, plaintiff telephoned Hulsey and told him he did not want to take the code enforcement job.  [Dkt. #32, Defendant's Statement of Fact ¶12; Dkt. #39, Plaintiff's Response to Defendant's Statement of Fact ¶12].  Plaintiff testified he told Hulsey he was going "to keep the assistant manager's position that I had not been notified by him, by the city attorney, or city council item that said my position had been eliminated and that therefore would keep my position."  [Dkt. #32, Ex. A, Webster Dep., 107:21-108:4].  Hulsey testified plaintiff only told him he was not going to take the code enforcement job, and did not tell him he wanted to keep the assistant city manager's position until the city council eliminated the position.  [Dkt. #32, Ex. B., Hulsey Dep., 77:8-22].  Both plaintiff and Hulsey testified plaintiff told Hulsey he was not resigning.  [Dkt. #32, Ex. A, Webster Dep., 108:9-16; Ex. B, Hulsey Dep., 79:4-10].  Plaintiff testified Hulsey told him he would have to call the city attorney and hung up.  [Dkt.

#32, Ex. A, Webster Dep., 108:9-16].  Hulsey testified that after the conversation, he wrote plaintiff a letter stating, "Today you placed a phone call to me around 4 pm stating that you were withdrawing your acceptance of [the Code Enforcement Officer] position.  I am treating this decision as a resignation of employment."  [Dkt. #32, Ex. B, Hulsey Dep., 78:4-13 and Ex. D, 7/17/09 Letter from Hulsey to Webster].

16.  At no time after his removal from the "office/position" of Assistant City Manager was plaintiff given a pre- or post-deprivation hearing.  [Dkt. #33, Plaintiff's Statement of Fact ¶16 and Ex. 2 thereto, Webster Affid., ¶11].

17.  Plaintiff's starting salary as an Administrative Assistant to the City Manager in 2001 was $57,220.80.  During his employment in the City Manager's Office, he received periodic raises, with his highest salary as Assistant City Manager being $86,512.00.  His salary, upon accepting the position of Code Enforcement Officer, became $52,000.00.  This was his salary on the date his employment with Bixby ended.  [Dkt. #32, Defendant's Statement of Fact ¶13 and Exs. E, F and C].

### Employee Handbook

18.  The City of Bixby's Employee Handbook states, in pertinent part:

The City of Bixby is an "at will" employer.  This means that you as an employee and or the City of Bixby may terminate the employment relationship at will, with or without cause, at any time, for any reason or no reason.

\*   \*   \*

**Personal/Sick Leave**

The City of Bixby provides personal and sick leave for eligible employees, when an employee is away from work due to illness.  Employees will be eligible for sick leave after completion of 30 calendar days of service.  Personal/sick leave is payable at the same rate as the employee's regular salary, and is subject to the same withholding elections.

Employees shall be able to accrue leave at the rate of one (1) day per month worked, or a total of twelve (12) days per calendar year.  An employee may accrue up to one hundred twenty (120) working days of sick leave.

When an employee has accumulated sick leave in the amount of one hundred twenty (120) working days, additional sick leave may be exchanged at the rate of one day paid vacation for every two (2) days of sick leave accumulated greater than one hundred twenty (120) working days.

Upon receipt of a letter of resignation, an employee who has completed one year of continuous employment with the Department shall be compensated for accrued sick leave days up to one hundred twenty (120) sick days.  All other sick leave will be forfeited.

*   *   *

**"AT WILL" Employees**

Employment with the City of Bixby is "at will," which means employment is subject to termination by either the City or the employee at any time, for any reason.  There are no contractual relationships between the City and an employee. Letters, benefits, policy statements, performance appraisals, employee handbooks, or other communications should not be interpreted as contracts.  No one has the authority to enter into any oral or written employment contract without the explicit written approval of the City Manager.  To monitor this at-will relationship, the City of Bixby has developed guidelines.

*   *   *

**Grievance Procedure**

An employee has a right to file a grievance regarding changes in their status or conditions of employment.  The grievance will lead to a full review by the City of Bixby within a 10 day period or as soon as possible thereafter.  Please ask the City Clerk for the grievance process and the forms necessary for such filing.  The grievance process for harassment charges is different and found in the Harassment section of this handbook.

[Dkt. #32, Ex. G, Employee Handbook, pp. 6, 17, 24, 27].

19.  On May 17, 2007, plaintiff signed an Acknowledgment of Employee Handbook

Receipt.  [Dkt. #32, Ex. H, Webster Acknowledgment].  The Acknowledgment states, *inter alia*:

I have entered into "at will" employment with the City of Bixby voluntarily and acknowledge that it is for no specified length of time.  Accordingly, either I or

8

the City of Bixby may terminate the employment relationship at will, with or without cause, at any time, for any reason or no reason.  I understand that neither this Handbook nor any other City of Bixby policy, practice or procedure is intended to provide any contractual obligations related to continued employment, compensation or employment contract.

Since the information, policies and benefits described here are necessarily subject to change, I acknowledge that revisions to the Handbook may occur, except to the City of Bixby's policy of employment-at-will. … The City of Bixby Management shall have sole authority to add, delete or adopt revisions to the policies in this Handbook.  Any written or oral statement by a supervisor contrary to the Employee Handbook is invalid if not signed or approved by the City Manager, and should not be relied upon by any employee. …

[Dkt. #32, Ex. H].

20. Plaintiff tesitified that when he signed the acknowledgment, he believed all of the provisions of the Handbook applied to him except the "at will" provision, because Micky Webb told him that the "at will" provision was a legal nullity.  [Dkt. #32, Ex. A, Webster Dep., 117:6-118:7].

### Bixby Home Rule City Charter

21.  The Bixby City Charter includes the following relevant provisions:

Section 1.2 Form of Government
The municipal government provided by this charter shall be known as "council-manager government."  All powers of said city shall be exercised in the manner prescribed by this charter, or if the manner is not thus prescribed, then in such a manner as prescribed by the latest statutes of the state of Oklahoma, or as the council may prescribe by ordinance."

Section 2.3 Council: Powers
Except as otherwise provided in this charter, all powers of the city including the determination of all matters of policy, shall be vested in the council.  The council shall have power, subject to the state constitution, state law, and this charter:
*   *   *
(g)  To create, change, and abolish all offices, departments, and agencies of the city government other than the offices, departments, and agencies created by this charter….

Section 2.4 Council: Appointment and Removals
Neither the council, the mayor, nor any of its other members may direct or request

the appointment of any person to, or his removal from, office or employment by the city manager or by another other authority; or, except as provided in this charter, participate in any manner in the appointment or removal of officers and employees of the city.  Except for the purpose of inquiry, the council and its members shall deal with the administrative service solely through the city manager; and neither the council nor any member thereof may give orders on administrative matters to any subordinate of the city manager either publicly or privately.  If any councilmember violates this, the councilmember is to be reported to the city manager in writing.  The city manager must then present the complaint to the councilmember.  If the city manager gets any additional complaints after the initial complaint, then it is to be reported to the councilmembers in an open meeting to the public.  Failure of the city manager to report this violation shall be grounds for termination.

Section 3.4 City Manager—Power and Duties
The city manager shall be the chief administrative officer and head of the administrative branch of the city government.  He shall execute the laws and ordinances of the city and administer the government.  The city manager shall have the special powers and duties herein enumerated, and shall be directly responsible to the council for the proper administration thereof to-wit:

(a)  To insure that all laws and ordinances governing the city of Bixby are enforced.

(b)  To appoint and remove all directors or heads of departments and all subordinate officers and employees in such departments, subject to the majority approval of the council.  The following department heads shall be subject to the terms of this section:

1.  City treasurer
2.  City clerk
3.  Police chief
4.  Fire chief
5.  Director of public works
6.  All other departments created.

Appointment and removal under this section shall be made upon the basis of merit and fitness alone, including proper subordination.  Preference shall be given to home labor when same is available.

Section 8.7 Removal, etc., Of Officers And Employees

The power to lay off, suspend, demote, and remove accompanies the power to appoint and elect; and the city manager, or other appointing or electing authority at any time may lay off, suspend, demote, or remove any officer or employee to whom he, or the other appointing or electing authority respectively may appoint or elect a successor.

[Dkt. #32, Ex. I, Home Rule Charter, City of Bixby].

**Hulsey Testimony Regarding City Council Approval of City Manager Decisions**

22.  Hulsey testified that in his view, City Council approval of appointment and removal of an employee is only required for the positions listed in § 3.4(b) of the Charter.  [Dkt. #32, Ex. B, Hulsey Dep., 39:23-40:4].  He testified that during his tenure, the City Council frequently voted to approve actions—personnel related or otherwise—although the vote is not required under the City Charter.  [*Id.*, 40:15-40:13].  Specifically, he testified:

> Q:    In any event, in your tenure as city manager, was it your experience that council tended to vote on things that were superfluous or unnecessary?
>
> A:    Absolutely.
>
> Q:    Such as?
>
> A:    We would vote on any number of things for any reasons, and certainly if a motion felt as though you needed a council—or a city manager may need a council backing on a decision that didn't require the council to act, certainly you could have the council vote on that.

[*Id.,* 40:25-41:10].

**Webb Affidavit**

23.  Plaintiff, in his Amended Response to Defendant's Motion for Summary Judgment, attached a second affidavit of former City Manager Micky Webb.  [Dkt. #40, Ex. 3].  The affidavit, which essentially serves as the cornerstone of plaintiff's legal argument, states, *inter alia*:

- The City of Bixby's Home Rule Charter, adopted in 1993 "is the superior authority for the City of Bixby and controls over all other ordinances and regulations, including the City of Bixby's Employee Handbook." [¶2].

- The City of Bixby Employee Handbook has not been adopted as law and, therefore, does not have precedence over the Home Rule Charter. [¶3].

- In the event the Home Rule Charter and the Employee Handbook conflicted with one another, the Home Rule Charter would govern. [¶4].

- "Although the Employee Handbook contains language indicating that all city employees are 'at-will,' such language conflicts with Section 3.4(b) of the Home Rule Charter.  Indeed, nothing in the Home Rule Charter requires 'at-will' employment or otherwise mirrors the 'at-will' provision of the Employee Handbook."  [¶5].

- For at least 10 years, the City Attorney, City Manager, Mayor and City Councilors have been provided with a copy of the "Handbook for City and Town Officials" published by the Oklahoma Municipal League (the "OML Handbook"). [¶6].

- "In accordance with Oklahoma law and based, *inter alia*, upon information contained in the OML Handbook, the City of Bixby has construed the language in Section 3.4(b) of the Home Rule Charter (i.e., 'on the basis of merit and fitness alone') as creating the expectancy of continued employment, meaning that effected employees (i.e. non-probationary employees) may only be removed for cause." [¶9].

- "In my role as City Manager, I was well aware, partially by virtue of the OML Handbook, that prior to terminating any 'for cause' employee, the City was required to give him or her an opportunity for a hearing, and that a failure to do so would be considered an unlawful deprivation of a property interest in violation of the U.S. Supreme Court's *Laudermill* decision." [¶10].

- "On more than one occasion, I have spoken with City Attorney Phil Frazier about pre-termination hearings for 'for cause' employees, and how the same was a requirement of federal law." [¶11].

- "The City of Bixby Employee Handbook gave me, as City Manager, the authority to approve, formalize, and effectuate written and oral statements by supervisors that otherwise would have been contrary to the Employee Handbook.  Once I approved (either orally or in writing) or signed off on such an oral statement, and to the extent that it was not unlawful, the effected employee could then reasonably rely on such statement, despite it being otherwise contrary to the Employee Handbook or other city policy." [¶17].

- "At the time Webster signed the Acknowledgment of Employee Handbook Receipt, I, as City Manager, told him that he would not be bound by it, that the acknowledgment regarding 'at will' employment was a legal nullity largely meant to discourage litigation, and that he could only be removed from the office of Assistant City Manager for cause and on the basis of merit and fitness alone." [¶18].

12

[Dkt. #40, Ex. 3].

## Payment of Accrued Sick Leave and Vacation Time

24.   The City of Bixby, upon plaintiff's "separation from employment,"[3] paid him accrued sick leave and vacation time based on plaintiff's salary at the time of his separation. [Dkt. #32, Ex. A, Webster Dep., 130:21-24 and Ex. J., Employer's Wage Claim Response].

25.   Plaintiff appealed the payment of accrued sick leave and vacation time based on his salary at the time of separation, arguing the payment should have been based on his former, highest salary as Assistant City Manager.  [Dkt. #32, Ex. A, Webster Dep., 130:21-24; Ex K, Webster's Wage Claim Form, 8/20/09; Ex. L, ODL Letter to City of Bixby, 8/24/09].  His hourly rate of pay as a Code Enforcement Officer was $25.  His hourly rate of pay in his previous position as Assistant City Manager was $41.59.  The ODL dismissed the claim on September 29, 2009, concluding "**It is unjustified according to statute or rules."[Dkt. #32, Ex. M, ODL Letter to City of Bixby, 9/29/09].

## II.  Analysis

Summary judgment pursuant to Fed.R.Civ.P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp.v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Kendall v. Watkins,* 998 F.2d 848, 850 (10th Cir. 1993).  "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex,* 477 U.S. at 317.

---

[3] Defendant contends plaintiff "resigned."  Plaintiff maintains he did not resign.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted).  In its review, the court construes the record in the light most favorable to the party opposing summary judgment.  *Garratt v. Walker,* 164 F.3d 1249, 1251 (10th Cir. 1998).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.  In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement o require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### A.   Due Process Claim

In order to state a claim for deprivation of procedural due process under the Fourteenth Amendment, a plaintiff must establish (1) that he possessed a protected interest such that the due process protections were applicable; and (2) that he was not afforded an appropriate level of process.  *See Camuglia v. City of Albuquerque,* 448 F.3d 1214, 1219 (10th Cir. 2006).

The Supreme Court has recognized that a public employee may have a constitutionally cognizable property interest in continued employment pursuant to state law or if "there is a clearly implied promise of continued employment." *Bd. Of Regents of State Colleges v. Roth,* 408 U.S.564, 577 (1972).   The court in *Roth* stated:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.
>
> \*     \*     \*
>
> Property interests, of course, are not created by the Constitution.  Rather

14

they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.*

"Whether an employee has a protected property interest in his position is purely a question of law to be determined by the court." *Whatley v. City of Bartlesville,* 932 F.Supp. 1300,1302 (N.D. Okla. 1996), citing *Driggins v. City of Oklahoma City,* 954 F.2d 1511, 1513 (10th Cir. 1992), cert. denied, 506 U.S 843 (1993). The existence of a property interest is determined by whether the terms of employment created by contract, statute, city charter, or employee manual, create a sufficient expectancy of continued employment. *Vinyard v. King,* 728 F.2d 428, 432 (10th Cir. 1984). Since plaintiff's position was not governed by contract, there are three remaining potential bases for finding creation of a property interest: Oklahoma statute, the Bixby City Charter, and the Employee Handbook.

Because resolution of this dispute requires construction of Oklahoma statutes and the Bixby City Charter, the following legal guidance is pertinent. First, in construing a provision of a city charter, statutory rules of construction are used. *Baughman v. Weicker,* 276 P. 208, 214 (Okla. 1929). Further, "[w]here the language of a statute or ordinance is plain and unambiguous and its meaning clear and no occasion exists for the application of rules of construction, the statute will be accorded the meaning as expressed by the language therein employed." *City of Bethany v. Hill,* 509 P.2d 1364, 1365 (Okla. 1973). The Oklahoma Supreme Court has stated:

The fundamental rule of statutory construction is to ascertain and give effect to legislative intent. The intent is first divined from the language of a statute. If a statute is plain and unambiguous, it will not be subjected to judicial construction but will receive the interpretation and effect its language dictates. Only where the intent cannot be ascertained from a statute's text, as when ambiguity or conflict with other statutes is shown to exist, may rules of statutory construction be invoked. When possible, different provisions must be construed together to effect a

15

harmonious whole and give intelligent effect to each.  An absurd result cannot be presumed to have been intended by the drafters.

*Rogers v. Quiktrip Corp.,* 230 P.3d 853, 859 (Okla. 2010) (footnotes omitted). *See also Sallee v. City of Oklahoma City,* 247 P.3d 750, 753 (Okla. Civ. App. 2010).

### 1.  Oklahoma Statutes

The City of Bixby is an Oklahoma municipality operating under 11 O.S. § 10-101, *et seq.* (statutory council-manager form of government).  Section 10-120 provides:

**Appointments and removals**

Appointments and promotions in the service of a statutory council-manager city shall be made solely on the basis of merit and fitness; and removals, demotions, suspensions, and layoffs shall be made solely for the good of the service.  The council by ordinance may establish a merit system and provide for its organization and functioning, and provide for personnel administration and regulation of personnel matters.

11 O.S. § 10-120.  Section 1-113, which describes the duties of the city manager, states in pertinent part:

**City manager—Duties**

The city manager shall be the chief executive officer and head of the administrative branch of the city government.  He shall execute the laws and administer the government of the city, and shall be responsible therefor to the council.  He shall:

**1.**  Appoint and when necessary for the good of the service, remove, demote, lay off or suspend all heads of administrative departments and other administrative officers and employees of the city except as otherwise provided by law….

11 O.S. § 10-113.

Sections 10-113 and 10-120 "clearly vest in the city manager a discretionary authority to determine when and under what circumstances a personnel action will be 'for the good of the service' and in the best interests of the city."  *Hall v. O'Keefe,* 617 P.2d 196, 199 (Okla. 1980). The court in *Hall* stated that "sections 10-113 and 10-120 do not create a property interest in

16

continued employment within Article 2, Section 7 of the Oklahoma Constitution." *Id.* at 200. The court found that in using the term "for the good of the service," the legislature "left the personnel matters of statutory council-manager city governments to the judgment of the city manager, subject primarily to control by the council through appropriate ordinances, and prohibiting only these decisions which are clearly arbitrary or capricious." *Id. See also, Phillips v. Calhoun,* 956 F.2d 949, 953 (10th Cir. 1992) (the term "for the good of the service" does not create a cognizable interest in employment). [4]

### 2.  Employee Handbook

The Bixby Employee Handbook states that City of Bixby employees are "at   will" employees, and plaintiff admits he signed a written acknowledgment.[5]

Plaintiff attacks the "at will" language of the Handbook on two fronts.  First, citing language from page 6 of the Handbook, plaintiff argues that Webb had the authority to—and did—change the "policy and practice" of the City by telling plaintiff the acknowledgment he signed regarding "at will" employment was a "nullity."  Webb's statement, however, did not actually address a "policy and practice" of the City of Bixby, but rather his opinion of the legal effect of plaintiff's signed acknowledgment.  Thus, it would be an unwarranted stretch to conclude that Webb's statement effectively changed the "at will" policy.  Further, the Handbook states:

> Employment with the City of Bixby is "at will," which means employment is
> subject to termination by either the City or the employee at any time, for any

---

[4] Plaintiff argues these statutes conflict with and are pre-empted by the Bixby City Charter.  However, in order to reach this conclusion, the court must accept as true plaintiff's interpretation of the City Charter (discussed in § II.A.3. below), which is that *no* city employee can be terminated except for cause and with City Council approval.

[5] As noted in the fact section, plaintiff testified in his deposition that he believed all provisions of the Employee Handbook applied to him *except* the statements regarding "at will" employment, because the city manager (Micky Webb) told him "that that was more or less null and void that it didn't really mean anything…as far as the law, is what he told me." [Dkt. #32, Ex. A, Webster Dep., 117:6-118:7].

> reasons.  There are no contractual relationships between the City and an employee.
> Letters, benefits, policy statements, performance appraisals, employee handbooks,
> or other communications should not be interpreted as contracts.  *No one has the
> authority to enter into any oral or written employment contract without the
> explicit written approval of the City Manager*. ….

[Dkt. #32, Ex. G at p. 24] (emphasis added).  There is no writing memorializing Webb's alleged

statement to plaintiff that his written acknowledgment of "at will" employment was a nullity.

Second, plaintiff argues that the language of the Handbook conflicts with the City

Charter, and the Charter takes precedence over the Handbook.  However, to find a conflict, one

would have to accept plaintiff's interpretation of § 3.4(b) of the Charter (discussed in § II.A.3

below), which is that *no* city employee could be terminated except for cause and with council

approval.

The court concludes that the employee handbook creates no cognizable property interest

in continued employment.  To the contrary, it supports a conclusion that plaintiff was an "at will"

employee.

### 3.   City Charter

Plaintiff asserts: (a) that under § 2.3(g) of the Charter, the city manager, Hulsey, did not

have authority to eliminate the position without approval of the city council and (b) under

Section 3.4(b) of the Charter, plaintiff could only be removed from his position for cause and

with council approval.

### a.   Elimination of Position

Plaintiff argues that under § 2.3(g) of the Charter, only the City Council had the authority

to eliminate the Assistant City Manager position.  That provision states in pertinent part:

> Except as otherwise provided in this charter, all powers of the city including the
> determination of all matters of policy, shall be vested in the council.  The council
> shall have power, subject to the state constitution, state law, and this charter:
>                            *   *   *

18

(g)  To create, change, and abolish all offices, departments, and agencies of the city government other than the offices, departments, and agencies created by this charter.

[Dkt. #32, Ex. I].  Plaintiff contends that the Assistant City Manager job was an "office" that was created when he was appointed in 2004.  However, the minutes of the April 12, 2004, City Council meeting do not support a conclusion that the council approved *creation* of an *office*.  Rather, it simply approved "appointment" of Webster as "Assistant City Manager."[6]   The record is devoid of any evidence (other than repeated efforts by plaintiff's counsel to confuse witnesses about the terms "office" and "position") that the City Council ever created an "Office" of "Assistant City Manager."[7]

### b. "For Cause" Requirement

Section 3.4(c) of the Charter gives the City Manager the power, *inter alia*:

(c)  To appoint and remove all directors or heads of departments and all subordinate officers and employees in such departments, subject to the majority approval of the council.  The following department heads shall be subject to the terms of this section:

1.  City treasurer
2.  City clerk
3.  Police chief

---

[6] Further, it is undisputed that Mike Jones was hired as Assistant City Manager on May 22, 2000, and served in that position until March 2004.

[7] In *Oklahoma City v. Century Indemnity Co.,* 62 P.2d 94 (Okla. 1936), the court, in considering whether the position of "deputy city clerk" was an office for purposes of statutory bond requirements, stated:

Generally speaking, one of the requisites of an office is that it must be created by a constitutional provision, or it must be authorized by some statute.

Many authorities hold that the chief elements of a public office are:  (a) The specific position must be created or authorized by law; (b) there must be certain definite duties imposed by law on the incumbent; and (d) they must involve the exercise of some portion of the sovereign power, "a position which has these three elements is presumably an 'office,' while one which lacks any of them is a mere 'employment.'"

*Id.* at 97.

    4.  Fire chief
    5.  Director of public works
    6.  All other departments created.

Appointment and removal under this section shall be made upon the basis of merit and fitness alone, including proper subordination.  Preference shall be given to home labor when same is available.

[Dkt. #32, Ex. I, Home Rule Charter, City of Bixby].  Plaintiff asserts that this provision applied not just to him as an "office" holder, but to every employee of the City of Bixby, so that *all* terminations must be "for cause,"[8]  and require City Council approval.  [Dkt. #40 at 19-20 of 29].

The only witness who has testified to this is Micky Webb, via affidavit. Defendant asserts (it appears correctly) that every deposed witness has testified in direct contradiction to this interpretation, including plaintiff himself.[9]  In any event, the Charter is the organic law of the municipality.  11 O.S. § 13-107.  It cannot be overturned by the legal opinion of a former city manager.

Moreover, it is impossible to reconcile plaintiff's interpretation of § 3.4(c) with § 2.4 of the Charter, which bars the City Council from directing hiring or removal of employees "except as provided in this charter," or with the broad designation of authority for administration of the city to the city manager, as set out in the first sentence of § 3.4.  The tortured interpretation urged by plaintiff flies directly in the face of the judicial mandate to construe different provisions

---

[8] The parties agree that the term "on the basis of merit and fitness alone" means "for cause." Defendant reiterates that the Oklahoma Supreme Court found that, in using the term, "for the good of the service," the legislature "left the personnel matters of statutory council-manager city governments to the judgment of the city manager, subject primarily to control by the council through appropriate ordinances, and prohibiting only these decisions which are clearly arbitrary or capricious."  *Hall*, 617 P.2d at 200.

[9] In his May 28, 2010 Response to Defendant's Interrogatory No. 12 ("State the basis of your allegation that the 'acts taken against Webster…were unlawful,' as alleged in paragraph 44 of your Petition"), plaintiff stated, inter alia, "[W]hile it was the exclusive responsibility of Bixby City Manager Blu Hulsey '[t]o appoint and to remove all directors or heads of departments and all subordinate officers and employees in such departments' (including the Assistant City Manager), Hulsey lacked the authority to eliminate the Assistant City Manager position itself, as that power is reserved exclusively for the Bixby City Council."  [Dkt. #32, Ex. N at p. 15 of 35].  Thus, plaintiff did not, at that point in this litigation, advance the argument that termination of *any* employee must be for cause and with Council approval.

together to effect "a harmonious whole and give intelligent effect to each." *Rogers,* 230 P.3d at 753.  Because "[a]n absurd result cannot be presumed to have been intended by the drafters," the court must reject plaintiff's proposed interpretation of the City Charter. *Id.*

The City Charter does not confer upon plaintiff a protected property interest in his job as Assistant City Manager.  The Employee Handbook states that employment is "at will."  State statutes do not confer to plaintiff a protected property interest in his job.  Plaintiff has failed to present evidence establishing the first element of a due process claim, i.e., that he possessed a protected interest such that the due process protections were applicable. *Camuglia,* 448 F.3d at 1219.

### B.   Claim for Unpaid Benefits

Plaintiff filed a wage claim with the ODL under 42 O.S. § 165.3.  The ODL, after an investigation and pursuant to Rule 380:30-3-3.1 of the Oklahoma Administrative Code, denied plaintiff's request as "unjustified by statutes or rules."  [#32, Ex. M].  Final administrative orders on wage claims are appealable under the Oklahoma Administrative Procedures Act.  40 O.S. §165.7(E).

Where the employer has an established policy granting vacation or sick pay, accrued unpaid vacation or sick pay is considered to be "wages" under 42 O.S. § 165.1(4). *Biggs v. Surrey Broadcasting Co.,* 811 P.2d 111, 114 (Okla. Civ. App. 1991).  Here, there is no dispute the City had such a policy.  However, the parties disagree over the appropriate rate of pay.  The City paid plaintiff accrued vacation and sick pay based on his salary as a Code Enforcement Officer.  Plaintiff contends the payment should have been based on his salary as Assistant City Manager.[10]

---

[10] Plaintiff's hourly rate as Assistant City Manager was $41.59.  His hourly rate as a Code Enforcement Officer was $25.

Under the terms of the Employee Handbook, upon termination of employment, an employee is entitled to receive compensation for his accrued vacation and sick days, payable at the same rate as the employee's "regular salary."  [Dkt. #32, Ex. G at p. 17].   Becky Byers, Bixby's treasurer, testified that the rate of one's "regular salary" is that which is "payable at whatever rate they are making when they use it."  [Dkt. #32, Ex. P, Byers Dep., 15:21-22].  Byers testified:

> [L]eave accrual is payable at whatever his current rate is.  We don't track it at a dollar value, we track it as hours, and so whatever the rate of pay is when it's used, that's the rate of pay he gets, whether it's an increase or a decrease.

[*Id.* at 16:17-22].  Defendant asserts that this practice is simple, fair and generally results in a favorable outcome for the individual employee, since most are making a higher salary when they leave than when they started to work for the city.

Plaintiff contends he is entitled to be compensated for accrued vacation and sick days based on his hourly rate "at the time he became vested in the right to such compensation," rather than at the hourly rate at the time his employment was severed.  The only basis for plaintiff's assertion is that the City Council had not approved his removal from that position.  [Dkt. #40 at 28 of 29].

Having determined that City Council approval of plaintiff's removal as Assistant City Manager was not required, the court concludes that the appeal of his wage claim must be denied. Plaintiff was paid for accrued benefits based on his hourly rate at the time of termination, in accordance with the City of Bixby's regular policy and practice.

### III.  Conclusion

For the foregoing reasons, defendant City of Bixby's Motion for Summary Judgment is granted.  [Dkt. #32].  Plaintiff's Motion for Partial Summary Judgment is denied.  [Dkt. #33].

ENTERED this 13th day of October, 2011.


Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma